Judge Cabranes is not participating, so we will excuse him and proceed with two judges, but we will hear argument next in No. 23-7753, Kamdem-Ouaffo v. London Fisher, L.L.P. Thank you. Mr. Kamdem-Ouaffo. Good afternoon, Your Honor. My name is Ricky Kamdem-Ouaffo. I'm representing myself against Baker Botts and Borrelli Associates and their co-defendants. This appeal, I pretty much focus it on asking whether I have a federal question against Baker Botts under the Federal Rule of Civil Procedures, Rule 60, which could be stated as fraud upon the court or as a violation of New York Judiciary Law 487, which would have occurred in a lawsuit that I brought to the Southern District of New York in 2015 against PepsiCo for correction of inventorship on a patent. Now, what happened is that there was a first lawsuit that was prosecuted at New York Supreme Court, and I was represented in that case by Borrelli Associates. That lawsuit was a whistleblower lawsuit, and it was brought in the context that my contract at PepsiCo was terminated because I refused to use a carcinogenic ingredient in formulating a food product. They terminated my contract. Now, in the proceedings at the New York Supreme Court, I was represented by lawyers, so I could not speak for myself. PepsiCo lawyers filed a motion for summary judgment, and finally, I received a decision from the justice, Justice Schengman. It says the case is dismissed because the project you work on was for laboratory purpose only. But recently, I discovered a decision from U.S. Judge Forrest in another case, which was prosecuted by Sensational Technologies at the Southern District of New York, at the same time as my federal action, which was dismissed by Res Dictata. Now, in the opinion from U.S. Judge Forrest, she wrote that PepsiCo deserves summary judgment against Sensational because they had conducted an in-house independent development of the technology, and there were several documents that the lawyers, the baker bots, named in their brief, and they stated that the project had been going on for 10 years, at least, by the time they filed a patent application, and they provided a commercial value of $70 million. From the perspective of a person like me, who is in the product development, lab scale, this courthouse is three times the lab at PepsiCo. When I read something like that, I just say, well, $70 million, if you try to convert that into the quantity of product you need to sell to make that money, that profit, where are you going to feed that? So I already knew, just by reading the opinion from Judge Forrest, I already knew, I said, there's a lot more that PepsiCo had not revealed, PepsiCo and their lawyer did not reveal to Justice Schengman at the Supreme Court of New York, and which caused the dismissal of my complaint. And also, when the baker bots' lawyers argued res judicata, they were already like eight months on the case brought by Sensational, so they were aware they had documents from which it could be proven that, okay, the argument PepsiCo made at the Supreme Court to dismiss my complaint, was, it was just a lie. Now, the district... Have you sought relief from the Supreme Court? I mean, have you gone back to the court that you think was misled? Excuse me, Ronald? Have you gone back to the court that you think was misled and that gave this original judgment? Now, when I discovered U.S. Judge Forrest's opinion, then I communicated morally, and I communicated Loboja lawyers. I asked them, well, this is my understanding of what this means, what U.S. Judge Forrest found. I'm requesting that you submit some kind of document to the Supreme Court, so I will try to see if there is some kind of post-judgment proceedings I could use to try to get a fair resolution for my case. They did not respond. Now, I also challenged the Baker-Butts lawyer. I said, well, okay, you had, you read what Justice Scheinman wrote. You read what the basis for dismissing my Supreme Court case, yet you endorse it, you argue res judicata, and you cause the dismissal of my federal action when you have all these documents that you could, I could have used to actually develop my case. Now, they responded at least, and they said, well, okay, we don't find any inconsistency between saying that this is, the project was for laboratory purpose only and saying that, okay, by the year 2015, PepsiCo had not sold. I said, well, look, there is a big difference. You are, I understand you are probably just using words, but these things are, this is a matter of facts, because when, from the product development, when we say laboratory purpose, you are working with quantities, smaller quantities. Typically, you don't exceed five pounds. But when you say commercial development, you are not in the pilot plan. You are in the operations. You are working outside. You are looking for how you are going to manufacture this. You are doing cost reduction. You are optimizing your formulas, and you are looking for, you are presenting samples to customers. So it's two different things. And now, which is, it seems that the district court adopted this kind of reasoning, but if you look at the facts, if we begin to look at the facts.  I think I understand the argument. You reserved two minutes for rebuttal, but let's hear from the appellee, Mr. Leghorn. Thank you. Good afternoon, and please, the court, my name is Thomas Leghorn of London Fisher. I'll be very short. The name London Fisher is not mentioned anywhere in the brief except for page 34 of the reply brief in the caption. There were no facts raised within the brief as to London Fisher. Our argument is that, therefore, the appeal from the dismissal of London Fisher below has been, in essence, abandoned by plaintiff. But, factually, the predicate is London Fisher never was involved with the appellant or with any of the cases below. The only connection that is drawn is an attorney that once worked at Borelli & Associates, came to our firm, and once he came to our firm, he did not have any connection with the case or with the appellant, and, therefore, none of these causes of action could have ever have been sustained, and the dismissal is appropriate. And I've used up my minute, and I thank Your Honors. Thank you very much, Mr. Leghorn. And I thank you because I'm retiring. This will be the last time I'll be able to be before you. Well, we're glad to have you. Mr. Camdemuato, you have two minutes remaining. Yes, Your Honor. It's true that Antonio Maleki, as I understand, he moved to a different firm. But the firm, when I review the court of the professional court. But you're worried about the conduct when he was at the Borelli & Associates. Excuse me, Your Honor. You're concerned about how he acted when he was at Borelli & Associates. Yeah, yeah, everything, his conduct. He was a lawyer. He was one of the lawyers who was working on the case. Now, the reason why London Fisher, I named London Fisher, is because when I brought the issue to his attention, he wrote me, he wrote something from, on the letterhead, from London Fisher. And when I looked at the court of professional conduct, London Fisher has supervisory role over him at this moment. Even though the conduct, the fraud I'm complaining of happened at the time. London Fisher could still have told him through the professional conduct saying that because you are still a lawyer, you need to write to the Supreme Court of New York to say that some of the arguments you submitted or some of the stipulation you did caused the improper dismissal of the plaintiff complaint. So they failed on that supervisory role. That's why London Fisher is there. Now, I'm not a lawyer, so obviously this is for you to determine. But with regard on this, I feel I'll focus only on whether I have a federal question because the judge failed me saying, well, you don't have that federal question. But disbelieving that I could prove the intentionality of Baker Botts. But the court did not take judicial notice of the records. And when I went back and purchased documents from PACER, which I submitted through the judicial notice, and thank you that you granted it, it's very clear that Baker Botts, the only question I had was, well, did they really own it? Because I'm a scientist, so there are things I know you don't know. And an expert witness would be appropriate to really explain those different some things to you because I'm representing myself. But when I look at it, I went back and purchased several documents. It was sensational. It was a long case. I found that they understood because they prevailed. Okay. I think we understand that. Yeah. And we will take a look. But thank you very much, Mr. Camden Mwapa, for your argument. Okay. The case is submitted.